1
2
3
4
5
6
7

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

8    In re DIADEXUS, INC.,                    Case No. 18-cv-04002-CRB

9                      Debtor.

10                                            **ORDER GRANTING IN PART AND**
                                             **DENYING IN PART MOTION TO**
11   LEAP TIDE CAPITAL                        **DISMISS AND GRANTING IN**
     MANAGEMENT, LLC,                         **PART AND DENYING IN PART**
12                                            **REQUEST FOR JUDICIAL NOTICE**
                     Plaintiff,
13
              vs.
14
     LORI RAFIELD; LEONE
15   PATTERSON; ELIZABETH HUTT
     POLLARD; JAMES R. SULAT; JOHN
16   J. SPERZEL; KAREN DREXLER; and
     JOHN T. CURNUTTE,
17                   Defendants.

18          This case arises from the Chapter 7 bankruptcy of Diadexus, a medical diagnostics

19   company incorporated in Delaware and headquartered in San Francisco. Sec. Amend.

20   Compl. ("SAC") (Dkt. 41) ¶¶ 1-9. After Diadexus declared Chapter 7 bankruptcy, Plaintiff

21   Leap Tide Capital Management, LLC, ("Leap Tide"), a Hedge Fund, purchased the rights

22   to the Diadexus estate and sued the former officers and directors of Diadexus for gross

23   negligence and breach of fiduciary duties in the run up to that bankruptcy. See generally

24   SAC. Defendants filed one previous motion to dismiss (Dkt. 16), which this Court granted

25   orally, Minute Entry (Dkt. 36). Plaintiff has now filed a second amended complaint, which

26   Defendants again ask this Court to dismiss (Dkt. 45).

27          The SAC makes five claims: (1) breach of fiduciary duty against all defendants,

28   SAC ¶¶ 57-67, (2) gross negligence against then-CEO Lori Rafield and then-CFO Leone

Patterson, SAC ¶¶ 68-81, (3) breach of fiduciary duty against Rafield, SAC ¶¶ 82-88 (4) gross negligence against Rafield, SAC ¶¶ 89-96, and (5) breach of fiduciary duty against former members of Diadexus's board, John Curnutte, Karen Drexler, Elizabeth Hutt Pollard, James Sulat, and John Sperzel (the "director defendants"), SAC ¶¶ 97-106.

The Court hereby GRANTS the Motion to Dismiss as to Claim I against the director defendants without leave to amend; GRANTS the Motion to Dismiss as to Claim V without leave to amend; GRANTS the Motion to Dismiss as to Claims I and II against Patterson without leave to amend; and DENIES the Motion to Dismiss as to Claims I, II, III, and IV against Rafield.

Defendants also ask the Court take notice of several documents, including Diadexus's Certificate of Incorporation. Request for Jud. Notice (Dkt. 47). The Court hereby TAKES JUDICIAL NOTICE of Diadexus's Certificate of Incorporation and DECLINES TO TAKE JUDICIAL NOTICE of the other documents at this time, as the Court does not find them relevant to the analysis of the Motion to Dismiss.

## I.  BACKGROUND[1]

The factual allegations in this case concern the conduct by the directors and officers of Diadexus, a medical diagnostics company, in the run up to Diadexus's declaration of Chapter 7 bankruptcy. See generally SAC.

In or around August 2014, Diadexus took out a $15 million loan from secured lender Oxford Finance LLC ("Oxford"). SAC ¶ 27. That loan required only interest payments in the first year and then, in October 2015, required payment of interest and principal amortization. Id.

At a meeting of Diadexus's audit committee in December 2015, Defendants Pollard, Sulat, Drexler, Patterson, and Rafield discussed projections that showed Diadexus

---

[1] As this case is before this Court on a motion to dismiss, the following facts, drawn from the SAC, are taken as true. Western Reserve Oil & Gas Co. v. New, 765 F.2d 1428, 1430 (9th Cir. 1985).

"running out of cash during the fourth quarter of 2016." Id. ¶ 28. The committee concluded that Diadexus "would not have adequate cash to maintain operations for the 12 months following the filing of its 2015 annual report." Id. Patterson then transmitted both "base case" and "upside" budgets to the board, which approved them. Id. ¶ 29. The SAC thus alleges that, by December 2015, all defendants knew that Diadexus was in danger of running out of money. Id.

Defendants initially hoped to defer the liquidity crisis by convincing Oxford to waive its contractual rights to receive principal amortization payments, but Oxford declined to do so. Id. ¶ 31. Rafield "promptly communicated" this to the board. Id. Rafield and Patterson then prepared a revised forecast for 2016 in which they projected Diadexus "would run out of operating cash in the third quarter of 2016, rather than in the fourth quarter," as previously projected. Id. Rafield told the board that Diadexus would be out of cash that summer, that Diadexus would become "illiquid in three-to-six months," and that "Oxford could immediately and at any time foreclose on" Diadexus's operating cash. Id. ¶ 32. Rafield stated that "the only issue that matters to Diadexus is the Oxford Debt." Id.

Oxford sent a notice of default to Diadexus in April 2016. Id. ¶ 33. Oxford proposed engaging with Diadexus in a "reasonable and consensual process to evaluate the state of Diadexus and its business plans and to determine appropriate next steps." Id. ¶ 35. On April 12, 2016, Oxford informed Rafield, in her capacity as CEO, that Oxford would agree to a forbearance period if a representative of Alvarez & Marsal ("Alvarez"), a "top-tier advisory firm specializing in corporate restructuring," would be permitted to "perform diligence on Diadexus' business" and "participate with management in approving certain expenses in a process to be agreed upon with Diadexus." Id. ¶ 35. Oxford asserted that Oxford would decide in its sole discretion on a "day-to-day" basis whether to exercise rights and remedies—that is, "sweep" Diadexus's assets—and that neither delay in exercising default remedies nor any ongoing discussions would be a waiver or could be relied on by Diadexus as forbearance. Id. ¶ 33.

Rafield rejected Oxford's offer because, Plaintiff alleges, it was contrary "to her

personal preferences and interests." <u>Id.</u> ¶ 36 (emphasis omitted). Rafield wrote to Diadexus's counsel and one of the directors, stating that Oxford's proposal was "unlikely to work for [her] personally[,]" that "[she] ha[s] no interest in working for Oxford" and that the "company needs to be recapped in order for [her] to remain engaged." <u>Id.</u> ¶ 36 (second alteration in original). She also asserted that she did not want to file for bankruptcy to "make it easy for Oxford. Let the shareholders sue Oxford for damaging their investment for the self interest of Oxford. The board can get someone else to deal with Oxford." <u>Id.</u> ¶ 37. Rafield also ordered that a restructuring attorney must no longer be included on emails. <u>Id.</u> ¶ 39.

The board nonetheless discussed hiring Alvarez on April 13, 2016, and after recusing Rafield from the discussion, retained Alvarez. <u>Id.</u> ¶ 42. However, the SAC alleges that

> [T]he retention of Alvarez was essentially a sham intended to insulate the Defendants from potential liability by merely creating an appearance that they were seeking professional advice. For example, Rafield stated that she was "confused" as to why Alvarez should be on an April 30, 2016 Board call to discuss the Company's urgent financial crisis. Counsel explained: "I think they should hear [Alvarez's] view. Again, this is being fully informed for the record and A&M is the Company's advisor. We aren't protecting against litigation from Oxford. We're protecting from litigation by other creditor and equity holders. […] This is a board protection call, not an operational decision call."

<u>Id.</u>

During this period, Diadexus also received interest from at least six potential purchasers. <u>Id.</u> ¶ 45. In May 2016, multiple buyers expressed interest in acquiring Diadexus, and at least six entered into non-disclosure agreements to review diligence materials contained in an electronic data room. <u>Id.</u> ¶ 45. The SAC alleges that Rafield stymied these purchase efforts, even though a purchase would have solved Diadexus's liquidity problems, because the purchasers would not have retained Rafield or payed her "expensive compensation package." <u>Id.</u> ¶¶ 46-47. The SAC also states that "none of the other Defendants stopped [Rafield from halting these purchases], even though they knew

4

that she was acting in bad faith and putting her personal interests above those of Diadexus." Id. ¶ 45. It does not explain how they had this knowledge or on what basis they would have known this. See id.

Rafield continued to, in the SAC's words, "dominate and interfere with this process." Id. ¶ 45. She barred Leap Tide, which had signed a non-disclosure agreement with Diadexus, from conducting diligence and refused to entertain discussions of an acquisition. Id. ¶ 46. She also closed the data room and revoked Alvarez's authority to continue the marketing process while Alvarez was reaching out to third parties to develop bids. Id. ¶ 48.

On or shortly before May 27, 2016, Diadexus told Oxford that it might consider a sale if it could achieve a cooperative or consensual process for limiting director liability. Id. ¶¶ 31, 49. Diadexus's counsel advised the board that he was convinced of the necessity of a Chapter 11 filing, which requires considerable effort. Id. ¶ 50. But Diadexus never filed for Chapter 11 bankruptcy, and on June 6, 2016, Oxford swept all of Diadexus's cash. Id. ¶¶ 50-51. The SAC alleges that, when Oxford swept the cash, Diadexus had enough cash on hand to file a Chapter 11 case or enter a forbearance agreement which would have prevented the sweep. Id. ¶ 51.

On June 10, 2016, Diadexus filed for bankruptcy under Chapter 7, and undertook a sale of assets on July 7, 2016, where the assets sold for $4.75 million. Id. ¶¶ 53-55. Plaintiff alleges that the harm to Diadexus amounts to tens of millions of dollars. Id. ¶ 55.

Plaintiff brought the instant suit against three former Diadexus officers—Lori Rafield, former CEO and Chairwoman of Diadexus, FAC ¶ 14, Leone Patterson, former CFO of Diadexus, FAC ¶ 15, Kenneth Fang, former chief medical officer of Diadexus, FAC ¶ 16—and several former board members—Elizabeth Hutt Pollard, James R. Sulat, John J. Sperzel, John T. Curnutte, and Karen Drexler. FAC ¶ 17. Defendants moved to dismiss under Rule 12(b)(6), and this Court granted the dismissal with leave to amend (Dkt. 36). Plaintiff then filed its SAC, which dropped Fang from the action, a claim for negligence, and the director defendants from any claims of gross negligence. Defendants

5

again move to dismiss all claims in the SAC under Rule 12(b)(6). Mot. at 1; see Fed. R. Civ. P. 12(b)(6).

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), the Court must ask whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). All factual inferences must be drawn in favor of the non-moving party. Western Reserve Oil & Gas Co., 765 F.2d at 1430. But courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

In addition, this case is governed by Delaware substantive law, because, under the Internal Affairs Doctrine, "only one State should have the authority to regulate a corporation's internal affairs," Edgar v. MITE Corp., 457 U.S. 624, 645 (1982), and Diadexus was incorporated in Delaware. See Mot. at vi, 5. The parties do not dispute that the substantive legal standards at issue are governed by Delaware law. See Opp. at vi-viii; Rep. at 2; see also generally In re Google, Inc. S'holder Deriv. Litig., 2012 WL 1611064, at *4 (N.D. Cal. May 8, 2012).

There is one wrinkle as to the legal standard that applies to this motion: whether Plaintiff must overcome the business judgment rule in order to survive the instant motion. The business judgment rule is a presumption under Delaware law "that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company. Aronson v. Lewis, 473 A.2d 805, 812 (Del. 1984), overruled on other grounds by Brehm v. Eisner, 746 A.2d 244 (Del. 2000). To overcome this presumption, "[t]he burden falls upon the proponent of a claim to rebut the presumption by introducing evidence either of director self-interest, if not self-dealing, or that the directors either lacked good faith or failed to exercise due care. If the proponent fails to meet her burden of establishing facts

6

rebutting the presumption, the business judgment rule, as a substantive rule of law, will attach to protect the directors and the decisions they make." Citron v. Fairchild Camera & Instrument Corp., 569 A.2d 53, 64 (Del. 1989) (internal citation omitted).

Plaintiff contends that the business judgment rule does not apply at the pleading stage, and thus that Plaintiff need not overcome this presumption at this stage of litigation. Opp. at 10; see In re Tower Air, Inc., 416 F.3d 229, 238 (3rd Cir. 2005) ("Generally speaking, we will not rely on an affirmative defense such as the business judgment rule to trigger dismissal of a complaint under Rule 12(b)(6).").

Plaintiff is incorrect. Delaware law makes clear that the business judgment rule "operates as both a procedural guide for litigants and a substantive rule of law." Citron, 569 A.2d at 64 (emphasis added). The business judgment rule functions as an affirmative defense to impose legal requirements on the plaintiff to overcome the rule. Id. Contrary to the Third Circuit's conclusion in In re Tower Air, several other federal courts, including courts in this District, have held that the business judgment rule places requirements on parties at the pleadings stage. See, e.g., In re Verifone Holdings, Inc. S'holder Derivative Litig., 2009 WL 1458233, at *10 (N.D. Cal. May 26, 2009) ("[T]he section 102(b)(7) bar may be raised on a Rule 12(b)(6) motion to dismiss."); Kaye v. Lone Star Fund V (U.S.), L.P., 453 B.R. 645, 679 (N.D. Tex. 2011) (explaining that Delaware case law "unambiguously holds that the plaintiff bears the burden of proof in rebutting the presumption of the business judgment rule). Most significantly, the Ninth Circuit has indicated, albeit in an unpublished decision, that the business judgment rule may be considered at the pleadings stage. Furman v. Walton, 320 F. App'x 638, 640 (9th Cir. 2009) (affirming district court's dismissal of shareholder derivative suit for failure to meet pleading standards because of the business judgment rule). This is consistent with the general rule that "[w]hen an affirmative defense is obvious on the face of a complaint . . . a defendant can raise that defense in a motion to dismiss." Rivera v. Peri & Sons Farms, Inc., 735 F.3d 892, 902 (9th Cir. 2013); accord Cedars-Sinai Med. Ctr. v. Shalala, 177 F.3d 1126, 1128–29 (9th Cir. 1999) ("[A]ffirmative defenses . . . may also be raised in motions

to dismiss filed before the first responsive pleading."). The business judgment rule is thus applicable at the pleading stage. So, Plaintiff must plead sufficient facts to overcome this presumption as to director defendants.[2]

## III.  DISCUSSION

The SAC sets out five claims for relief, each of which Defendants seek to have dismissed. The first claim alleges breach of fiduciary duty against all defendants for failure to protect the value of Diadexus's assets. SAC ¶¶ 57-67. The second alleges gross negligence against Rafield and Patterson for failure to protect the value of Diadexus's assets. Id. ¶¶ 68-81. The third alleges breach of fiduciary duty against Rafield for failure to conduct a sale or restructuring process timely and in good faith. Id. ¶¶ 82-88. The fourth alleges gross negligence against Rafield for failure to conduct a proper and timely sale or restructuring process. Id. ¶¶ 89-96. Fifth and finally, the SAC alleges a breach of fiduciary duty against the director defendants—Curnutte, Drexler, Pollard, Sulat, and Sperzel—for failure to supervise and abdication of responsibility. Id. ¶¶ 97-106. As the five claims in the SAC involve overlapping conduct, involve different combination of Defendants, and implicate overlapping legal issues, this memo is primarily organized by defendant rather than claim.

### A.  Director Defendants: Breach of Fiduciary Duties

Plaintiff alleges two claims against the director defendants: Claim I alleges a breach of the fiduciary duty of loyalty and good faith for failure to protect Diadexus's assets, and Claim V alleges a breach of the fiduciary duty of loyalty and good faith for abdication and

---

[2]  The parties also dispute a second aspect of the business judgment rule. Defendants argue that the business judgment rule applies both to directors and officers. See Opp. at vi. However, while there is no dispute that the rule applies to directors, whether the business judgment rule applies to corporate officers is unsettled under Delaware law. See Amalgamated Bank v. Yahoo! Inc., 132 A.3d 752, 781 (Del. Ch. 2016) (recognizing a "vibrant debate" over whether the business judgment rule applies to officers). Ultimately, however, the claims against the officer defendants can be resolved without addressing this issue, because the claims against Patterson fail for independent reasons, and the claims against Rafield can overcome, at least at this stage, that presumption.

failure to supervise Rafield. SAC ¶¶ 58, 106. Neither claim is adequately pled.

Directors possess a triad of fiduciary duties—good faith, loyalty, and care. <u>Cede & Co. v. Technicolor, Inc.</u>, 634 A.2d 345, 361 (Del. 1993), <u>decision modified on reargument</u>, 636 A.2d 956 (Del. 1994). The obligation to act in good faith does not establish an independent fiduciary duty, but the failure to act in good faith may result in liability because the requirement to act in good faith "is a subsidiary element[,]" i.e., a condition, "of the fundamental duty of loyalty." <u>Stone ex rel. AmSouth Bancorporation v. Ritter</u>, 911 A.2d 362, 369–70 (Del. 2006).

Importantly for this case, Delaware law permits corporate charters to contain exculpatory provisions that "protect[] the directors from personal liability for breaches of the duty of care." <u>Lyondell Chem. Co. v. Ryan</u>, 970 A.2d 235, 239 (Del. 2009) (citing 8 Del. C. § 102(b)(7)). Section 102(b)(7) further permits a corporation's certificate of incorporation to include:

> A provision eliminating or limiting the personal liability of a director to the corporation . . . for monetary damages for breach of fiduciary duty as a director, provided that such provision shall not eliminate or limit the liability of a director: (i) For any breach of the director's duty of loyalty to the corporation or its stockholders; (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law[.]

8 Del. C. § 102(b)(7).

Diadexus's Certificate of Incorporation did precisely that. Article 5.1 of that Certificate of Incorporation states, as relevant here, that "[t]o the fullest extent permitted by the Delaware General Corporation Law . . . no director of the corporation shall be personally liable to the corporation or its stockholders for monetary damages for breach of fiduciary duty as a director." Mot. Ex. 4 at 4 (Dkt. 46-4). Under § 102(b)(7), where an exculpatory provision like the one here exists, the "plaintiff must allege a non-exculpated breach of the duty of loyalty." <u>van der Fluit v. Yates</u>, 2017 WL 5953514, at *8 (Del. Ch. Nov. 30, 2017). Thus, Diadexus's Certificate of Incorporation precludes claims against the directors except those for breaches of the duty of loyalty and those claims for bad faith or intentional misconduct. <u>See</u> Mot. Ex. 4 at 4. So, the director defendants are exculpated

from breaches of duty of care. Opp. at 13; Mot. at 9. To survive the instant motion as to Claims I or V against the director defendants, Plaintiff must therefore allege a breach of the duty of loyalty. <u>See</u> Mot. Ex. 4 at 4.

Under Delaware law, "a plaintiff can plead that a board breached its duty of loyalty by alleging non-conclusory facts, which suggest that a majority of the board either was interested in the sales process or acted in bad faith in conducting the sales process." <u>In re Answers Corp. S'holder Litig.</u>, 2012 WL 1253072, at *7 (Del. Ch. Apr. 11, 2012). Although the SAC does not specify whether Plaintiff believes the director defendants breached their duty of loyalty through bad faith conduct or self-interest, <u>see generally</u> SAC, the Opposition to the Motion to Dismiss suggests that Plaintiff is arguing that the director defendants acted in bad faith. Opp. at vii-viii.

To satisfy the "high bar to pleading bad faith," the defendant's actions must have been "so far beyond the bounds of reasonable judgment that it seems essentially inexplicable on any ground other than bad faith." <u>In re TIBCO Software Inc. S'holder Litig.</u>, 2015 WL 6155894, at *21 (Del. Ch. Oct. 20, 2015). There "is a vast difference between an inadequate or flawed effort to carry out fiduciary duties and a conscious disregard for those duties." <u>Lyondell Chem. Co.</u>, 970 A.2d at 143. The existence of "some process" will generally bar a finding of bad faith. <u>Houseman v. Sagerman</u>, 2014 WL 1600724, at *7 (Del. Ch. Apr. 16, 2014) (no bad faith where the board's process included "contact[ing] legal counsel" and "reach[ing] out to [an asset sales advisor]" and "hir[ing] them to assist in shipping the company."). If "a board attempts to meet its duties, no matter how incompetently, the directors did not consciously disregard their obligations." <u>In re MeadWestvaco Stockholders Litig.</u>, 168 A.3d 675, 686 (Del. Ch. 2017).

Directors are also, as discussed <u>supra</u>, protected by the business judgment rule, which sets forth a powerful presumption in favor of actions taken by directors and outlines that a decision made by a loyal and informed board will not be overturned by a court unless it cannot be "attributed to any rational business purpose." <u>Cede & Co.</u>, 636 A.2d at 361 (quoting <u>Sinclair Oil Corp. v. Levien</u>, 280 A.2d 717, 720 (Del. 1971)). "It is almost

impossible for a court, in hindsight, to determine whether the directors of a company properly evaluated risk and thus made the 'right' business decision." In re Citigroup Inc. S'holder Derivative Litig., 964 A.2d 106, 126 (Del. Ch. 2009). This "judicial second guessing is what the business judgment rule was designed to prevent." Id. Conclusory allegations without "particularized factual allegations demonstrating bad faith by the director defendants" are insufficient to plead bad faith. Id. at 127.

### 1. Claim I: Failure to Protect the Company's Value

Claim I alleges that all Defendants breached their fiduciary duty by failing to protect the value of the company's assets when they did not file for Chapter 11 bankruptcy or enter into a forbearance agreement. SAC ¶¶ 57-67. Plaintiff relies heavily on In re Bridgeport Holdings, Inc., 388 B.R. 548 (Bankr. D. Del. 2008), in which the Bankruptcy Court of the District of Delaware held that "[f]iduciaries breach their duty of loyalty by intentionally failing to act in the face of a known duty to act, demonstrating a conscious disregard for their duties," id. at 564. Plaintiff urges that the director defendants' failure to take these two steps—filing for Chapter 11 and entering a forbearance agreement—demonstrates bad faith under this standard. Opp. at 16-17.

Generally, "the decision whether to file for bankruptcy protection or not is generally a matter of directors' business judgment." In re Fedders N. Am., Inc., 405 B.R. 527, 542 (Bankr. D. Del. 2009) (citing Odyssey Partners, L.P. v. Fleming Companies, Inc., 735 A.2d 386, 416–20 (Del.Ch. 1999)). Moreover, Delaware law does not require the board of an insolvent company to file for bankruptcy protection. RSH Liquidating Tr. v. Magnacca, 553 B.R. 298, 313–14 (Bankr. N.D. Tex. 2016) ("[Plaintiff's] alternative assertion that the board should have placed the company in bankruptcy in order to preserve the 'immediate value' of the company is a permutation of the argument that a board has a duty to avoid deepening a company's insolvency. But, no such cause of action exists under Delaware law." (citing Trenwick Am. Litig.Tr. v. Ernst & Young, 906 A.2d 168, 175 (Del.Ch. 2006), aff'd sub nom. Trenwick Am. Litig. Tr. v. Billett, 931 A.2d 438 (Del. 2007))).

11

Plaintiff points to a decision from the Bankruptcy Court for the District of Delaware, In re Simplexity, LLC, 2017 WL 65069 (Bankr. D. Del. Jan. 5, 2017), in which the plaintiffs alleged that defendants violated their fiduciary duties when they failed to file for bankruptcy protection. Id. at *4; Opp. at 14. However, Simplexity did not consider either an exculpatory clause or the business judgment rule, because Third Circuit precedent precludes consideration of those affirmative defenses at the motion to dismiss stage. Id. at *8; see also In re Tower Air, Inc., 416 F.3d at 236. It thus denied the motion to dismiss as to breach of fiduciary duty without addressing whether the facts there would have overcome the business judgment rule. Simplexity, 2017 WL 65069, at *4. In the Ninth Circuit, by contrast, as discussed above, the Court may consider these defenses at this stage. See Rivera, 735 F.3d at 902; see also Furman, 320 F. App'x at 640. Simplexity, then, provides no insight into whether the failure to file for bankruptcy protection or seek forbearance, without more, meets the bad faith standard. See Simplexity, 2017 WL 65069, at *4; see also Rep. at 6-7.

The SAC does not allege that the director defendants took no action; to the contrary, the SAC states that the board retained Alvarez, even over Rafield's objections, and consulted with corporate counsel about that possibility. SAC ¶¶ 37, 38, 50. It also acknowledges that the terms of the offered forbearance were not "optimal" and that the Chapter 11 process "requires considerable effort." Id. ¶¶ 44, 50. Plaintiff offers no reason to conclude that the board's failure to file for bankruptcy or enter forbearance, without more, is "so far beyond the bounds of reasonable judgment that it seems essentially inexplicable on any ground other than bad faith." In re TIBCO Software Inc. S'holder Litig., 2015 WL 6155894, at *21; accord Houseman, 2014 WL 1600724, at *7 ("The issue before me is not whether [the board's] actions were sufficient to adequately inform the directors about the value of the Company in satisfaction of the duty of care, but rather whether the Board knowingly and completely failed to undertake a reasonable sales process. To the contrary, the Board did undertake some process aimed at achieving the best price for stockholders, and considered, and rejected, obtaining a fairness opinion based on

cost. That is not bad faith."). Though Plaintiff alleges that hiring Alvarez was a cynical tactic, SAC ¶ 42, the SAC also states that some board members believed "it is in the best interests of the company and all of its constituencies to work with [Alvarez] constructively." SAC ¶ 41. And so the SAC, far from adequately alleging bad faith, contains facts that show that the board took steps to promote the best interests of Diadexus—even if it did not take the steps that Plaintiff, in hindsight, would have wanted it to take.

The SAC's allegations thus do not contain an "extreme set of facts" necessary to plead bad faith. Nor does Plaintiff identify in the Opposition any new facts it would seek to plead if given leave to amend. See generally Opp. The Court thus GRANTS the Motion to Dismiss as to Claim I against the director defendants without leave to amend.

### 2. Claim V: Failure to Supervise and Abdication of Responsibility

The next claim against the director defendants, Claim V, alleges that the directors breached their fiduciary duties by failing to adequately supervise Rafield and the financial affairs of Diadexus. SAC ¶¶ 97-106. It alleges that the directors "permitted Rafield to control and dominate the process of dealing with Oxford, the Oxford Loan default, and the Company's known need to enter into a sale or other extraordinary transaction before it ran out of financing." Id. ¶ 103. Plaintiff alleges the directors "disregarded their responsibility to act in the best interest of the Company by designating excessive authority to Rafield and by failing to supervise her." Id.

As with Claim I, because of Diadexus's Certificate of Incorporation, the only fiduciary duty available to Plaintiff is a breach of the duty of loyalty. See 8 Del. C. § 102(b)(7).[3] And, as above, that imposes a high bar.

Plaintiff's allegations are as follows: The board knew that Rafield had "no interest in working for Oxford," was dismissive of the possibility of shareholder litigation, was

---

[3] Although 8 Del. C. § 102(b)(7) also permits claims sounding in allegations of bad faith or intentional misconduct, Claim V does not appear to allege either against the director defendants. See generally SAC ¶¶ 97-106.

concerned with her personal interest, and dominated the negotiation process with potential purchasers, including closing the data room and preventing purchase by a company, Cleveland HeartLab, that would have no need to retain Rafield after the acquisition. SAC ¶¶ 36-37, 41, 45, 47; see also Opp. at 19-20. Despite these facts, Plaintiff argues, the director defendants "permitted Rafield to control and dominate the process of dealing with Oxford, Alvarez, the Loan default, and the Company's need to enter into a sale or other extraordinary transaction before it ran out of liquidity. By so doing, they disregarded their responsibilities to act in the best interest of the Company, which states to a non-exculpated claim for breach of the duties of loyalty and good faith." Opp. at 20.

These allegations, as with those in Count I, do not meet the high bar for breach of the duty of loyalty. As the Court of Chancery has explained, "[n]egligent oversight by directors, although certainly not commendable, is not a breach of fiduciary duty. Even grossly negligent board action does not imply a non-exculpated breach. A breach of the duty of loyalty via bad faith . . . requires disregard so profound that it raises an inference of scienter." McElrath on behalf of Uber Techs., Inc. v. Kalanick, 2019 WL 1430210, at *16 (Del. Ch. Apr. 1, 2019); accord In re Chelsea Therapeutics, Inc. S'holders Litig., 2016 WL 3044721, at *1 (bad faith requires conduct "so far beyond the bounds of reasonable judgment that it seems essentially inexplicable on any ground other than bad faith.").

That is simply not the case here. While the defendants allegedly allowed Rafield to "dominate and interfere with" the process, not "stopp[ing] her, even though they knew that she was acting in bad faith and putting her personal interests above those of Diadexus," the directors were constantly appraised by counsel and restructuring advisor Alvarez. SAC ¶¶ 41, 42, 44, 45, 50, 103. The directors also deliberated about business decisions specifically for the "best interests of the company." Id. ¶¶ 41, 42. For instance, Sulat wrote that "it is in the best interests of the company and all of its constituencies to work with [Alvarez] constructively." Id. ¶¶ 40, 41. Drexler also wrote to the entire board with concerns that "removing [Alvarez] might send [Oxford] over the top." Id. ¶ 48. And, most importantly, the director defendants did in fact overrule Rafield's decisions on the issues of

14

1  sale and restructuring, for instance hiring Alvarez. Id. ¶ 42. While the board did rely on

2  Rafield, they were entitled to do so under Delaware law. See In re MONY Grp. Inc.

3  S'holder Litig., 852 A.2d 9, 20 (Del. Ch. 2004) (holding that a board appropriately can rely

4  on its CEO to conduct negotiations). And so the SAC does not plead sufficient factual

5  allegations to show that the director defendants acted in bad faith.

6     Plaintiff's reliance on In re Bridgeport Holdings, Inc., 388 B.R. 548, 565 (Bankr. D.

7  Del. 2008), to support its position that it has met the pleading requirements of bad faith

8  regarding the failure to supervise claim, does not alter that conclusion. In Bridgeport, a

9  new COO entered the company and, within three days, decided to sell the company's

10 assets. Id. at 565. There was no bidding process and "[o]nly cursory contacts were made to

11 search for strategic buyers and no consideration was given to contacting potential financial

12 buyers." Id. After the sale was completed, "[a]t least three competitors complained that

13 they did not get sufficient notice of the fact that the Assets were for sale and they would

14 have been serious potential buyers had they been given the opportunity. Following the

15 public announcement of the transaction, a number of financial market analysts expressed

16 the view (with appropriate analysis to back it up) that the $28,000,000 purchase price was

17 a small fraction of the value that [the company] obtained . . . . [the plaintiff] filed a

18 fraudulent conveyance action against [the company] and [the company] settled that action

19 by paying [plaintiff] . . . an amount almost equal to what the . . . Defendants bargained for

20 in selling the Assets[.]" Id. at 565-66. On these facts, the Bankruptcy Court held that the

21 complaint adequately alleged a violation of the duty of loyalty. Id. at 566. But these

22 extreme facts do not track the facts alleged in the SAC; crucially, unlike in Bridgeport, the

23 board here was involved in the process, SAC ¶¶ 41-42. Bridgeport, then, has no bearing on

24 the analysis here.

25     The Court thus GRANTS the Motion to Dismiss as to Claim V. Furthermore, given

26 that Plaintiff has already been given the opportunity to address the deficiencies in the

27 claims against the director defendants and the Opposition does not specify any additional

28 facts it would seek to present, see generally Opp., the Court DENIES leave to amend. See

### B. Patterson

Plaintiff next alleges two claims against Patterson, then the CFO of Diadexus, for failure to protect Diadexus's assets. In Claim I, Plaintiff alleges that Patterson breached her fiduciary duty to Diadexus. SAC ¶ 58. In Claim II, Plaintiff alleges Patterson acted grossly negligently in failing to protect the value of Diadexus's assets. Id. ¶ 78. Because Patterson was the CFO, not a director, she is not exculpated from duty of care claims. See Mot. Ex. 4 at 4. As a result, because Claim I simply states that Patterson violated a "fiduciary duty," analyzing that claim requires considering whether the SAC adequately alleged a breach of the duty of care, the duty of loyalty, or the duty of good faith. See Malone v. Brincat, 722 A.2d 5, 10 (Del. 1998) (recognizing that there is a "triad" of fiduciary duties, "due care, good faith, and loyalty."). In addition, under Delaware law, duty of care violations are "predicated upon concepts of gross negligence." Midland Grange No. 27 Patrons of Husbandry v. Walls, 2008 WL 616239, at *9 (Del. Ch. Feb. 28, 2008). And so Claim II, which alleges that Patterson was grossly negligent, SAC ¶¶ 68-81, tracks the claim for breach of the duty of care.

The SAC contains only four claims about Patterson's conduct. It states that she participated in the audit committee, and in 2015 "led a discussion of base case financial projections that showed the Company running out of cash during the fourth quarter of 2016." Id. ¶ 28. It also states that she "transmitted the base case and upside budgets to the entire Board and requested the Board to approve them." Id. ¶ 29. It further states that she and Rafield "prepared a revised forecast for 2016," which "projected the Company now would run out of operating cash in the third quarter of 2016." Id. ¶ 31. Finally, it alleges that Patterson left Diadexus the same day that Diadexus began its Chapter 7 case. Id. ¶ 52. Similarly, the Opposition to the Motion argues only that "Patterson is named, as the Company's most senior financial officer, for failing to act to cause the Company to timely

file for bankruptcy or otherwise protect its cash." Opp. at 15 n.6. That statement cites no support in the SAC. Id.

These sparse allegations do not demonstrate gross negligence or a breach of a fiduciary duty, even assuming the business judgment rule does not apply to officers.

First, gross negligence is an "extremely stringent" standard. In re Lear Corp. S'holder Litig., 967 A.2d 640, 652 (Del. Ch. 2008). It requires the plaintiff show that the Defendant acted with "reckless indifference to or a deliberate disregard of the whole body of stockholders" or took actions outside "the bounds of reason." Tomczak v. Morton Thiokol, Inc., 1990 WL 42607, at *12 (Del. Ch. Apr. 5, 1990). The SAC does not explain how Patterson's participation in the audit committee, requests that the board approve budgets, or departure from Diadexus rise to that level. See generally SAC. Indeed, the SAC does not allege those activities were improper in any way, "much less undertaken with gross negligence." Id. The SAC thus fails to adequately plead gross negligence against Patterson.

Second, and relatedly, the SAC fails to identify any breach of a fiduciary duty. For one thing, the SAC does not identify which duty or duties Plaintiff believes Patterson breached. See SAC ¶¶ 68-81. Nor does it identify what conduct Patterson should have taken to avoid a violation of a fiduciary duty. See generally id. Indeed, insofar as this claim can be understood to allege that Patterson played a role in preventing Diadexus from filing for bankruptcy, it appears that that action would not have been within her purview as an officer, as "whether to file for bankruptcy protection or not is generally a matter of directors' business judgment" under Delaware law, and Patterson was an officer. In re Fedders N. Am., Inc., 405 B.R. at 542 (citing Odyssey Partners, L.P., 735 A.2d at 416–20) (emphasis added). The SAC therefore fails to adequately plead a breach of fiduciary duty against Patterson.

Moreover, this Court stated at the Motion to Dismiss Hearing on December 21, 2018, that "[a]s to the gross negligence of the officer defendants . . . it is the Court's view that it should be pled with greater particularity with respect to facts." H'rg Tr. 3:16-17

17

(Dkt. 38). Additionally, Plaintiff has been unable to offer more specific allegations about Patterson's conduct. The Court thus GRANTS the Motion to Dismiss as to Claims I and II against Patterson without leave to amend.

### C.    Rafield

The final defendant is Rafield, the then-CEO and a member of the board. SAC ¶ 16. The SAC levels four claims against her: breach of fiduciary duty for failure to protect the value of Diadexus's assets (Claim I), gross negligence for failure to protect the value of Diadexus's assets (Claim II), breach of fiduciary duty for failure to conduct sale or restructuring (Claim III), and gross negligence for failure to conduct sale or restructuring (Claim IV). Confusingly, the SAC fails to specify what conduct it alleges Rafield to have taken in her capacity as an officer, and what conduct she took her in capacity as a director. See generally SAC. As explained above, this matters because Diadexus's Certificate of Incorporation and 8 Del. C. § 102(b)(7) exculpates directors, but not officers, from many claims for breaches of fiduciary duty. Mot. Ex. 4 at 4 (Dkt. 46-4); see Arnold v. Soc'y for Sav. Bancorp, Inc., 650 A.2d 1270. 1288 (Del. 1994) ("[W]here a defendant is a director and officer, only those actions taken solely in the defendant's capacity as an officer are outside the purview of Section 102(b)(7)" (internal citation omitted)). So, if the claims against Rafield for breach of fiduciary duty—Claims I and III—are understood as being leveled against her as a director, then Plaintiff would have to demonstrate that Rafield violated a duty of loyalty and either acted in bad faith, intentionally engaged in misconduct, or knowingly violated the law. See 8 Del. C. § 102(b)(7); Mot. Ex. 4 at 4. By contrast, for the claims against Rafield in her officer capacity, the SAC can be understood to allege violations of any fiduciary duty.[4]

Because the SAC alleges that Rafield violated her fiduciary duties and was grossly negligent in both her capacities as a director and an officer, Defendants argue that the

---

[4] The SAC also fails to state which fiduciary duties Rafield breached. See generally SAC. Instead, it states only that it believes that Rafield breached a "fiduciary duty." Id. ¶¶ 57-67, 82-88.

complaint would need to specify what actions Rafield took as a director and which she took as an officer. Mot. at vii; Rep. at 9-10. The SAC clearly alleges Claims II and IV against Rafield in her capacity "as Chief Executive Officer." SAC ¶¶ 69, 90. Apart from Claims II and IV, the factual allegations in the SAC do not specify activities that are distinct to officers as opposed to directors, save for the process of "successfully completing a chapter 11 process," much of which must be supplied by a debtor's chief executive officer and chief financial officer." Id. ¶ 50.

Only one Delaware case supports Defendants' position that the complaint must identify which actions were taken in the role of officer and which were taken in the role of director: Arnold v. Soc'y for Sav. Bancorp, Inc., 650 A.2d 1270 (Del. 1994). In Arnold, the Delaware Supreme Court rejected a claim for breach of the duty of loyalty because the "plaintiff has failed to highlight any specific actions [defendant] undertook as an officer (as distinct from actions as a director)[.]" 650 A.2d at 1288. However, Arnold addressed a motion for summary judgment, id. at 1290, and, as far as the Court is aware, no Delaware court has yet had occasion to consider whether that specificity requirement is a substantive doctrine that would apply at the pleadings stage or is a Delaware procedural rule. Moreover, the Supreme Court of Delaware has held that the same facts that would adequately allege a breach of a fiduciary duty against a corporate director would also adequately allege a breach of a fiduciary duty against a corporate officer. Gantler v. Stephens, 965 A.2d 695, 709 (Del. 2009). And reading Arnold's requirement for specificity into the pleading requirements would run counter to the general principle that at the motion to dismiss stage, all "reasonable inferences" must be drawn in favor of the non-moving party, see Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001), because if the allegations that would support a claim against an officer if those allegations were understood as having occurred in the officer capacity, an inference should be drawn that the conduct was taken in the officer capacity.

This is also consistent with several other district and bankruptcy courts' conclusions as to the requirement that complaints specify whether actions were taken in a defendant's

19

role as an officer or a director. <u>See</u> <u>In re Century Electronics Mfg. Inc.</u>, 345 B.R. 33, 34, 36 (Bankr. D. Mass. 2006) ("[T]he exculpatory clause does not shield officers who are also directors from breach of fiduciary duty claims arising from their acts taken as officers. While it is true that in this case, potentially, the Plaintiffs will have to identify the actions taken by the Defendants in their capacity as officers, it does not necessarily follow that Plaintiffs will be unable to do so during trial. As a practical matter, it will not be feasible at this stage of trial to try to parcel out actions taken by the Defendants in their capacity as directors."); <u>In re Robotic Vision Sys., Inc.</u>, 374 B.R. 36, 53–54 (Bankr. D.N.H. 2007) ("Costa contends that the complaint fails to make a distinction between the capacity in which he took various actions, i.e., whether as an officer or as a director . . . . the Court finds that the Trustee has made sufficient allegations, that if true, demonstrate a plausible entitlement for relief for breach of fiduciary duty by Costa acting in his capacity as an officer . . . . Accordingly, the Court shall not dismiss Counts I and II on that basis. Rather, the Trustee will be required at trial to demonstrate in which capacity Costa took specific actions[.]"); <u>RSH Liquidating Tr. v. Magnacca</u>, 553 B.R. 298, 316 (Bankr. N.D. Tex. 2016) ("[I]n the context of a motion to dismiss, reasonable inferences must be drawn in favor of the plaintiff. It is reasonable to infer that at least some of Magnacca's actions were taken in his capacity as an officer."). So, while a lack of clarity regarding what conduct Rafield took as an officer or a director may, later, present a hurdle for Plaintiff, <u>see</u> <u>Arnold</u>, 650 A.2d at 1288, at this stage in litigation, it does not foreclose the claims against Rafield.

### a.      Claims I and III: Breach of Fiduciary Duty

Claim I alleges that all Defendants, including Rafield, "were indifferent to their known duties by failing to act to preserve and protect the value of Diadexus' business and assets in the face of an imminent, severe, and actually foreseen risk of a cash sweep, such as by taking such conventional and customary steps as commencing a chapter 11 case or entering into any of the forbearance agreements offered by Oxford." SAC ¶ 63. By failing to act, Rafield was "disloyal and faithless to Diadexus." <u>Id.</u> ¶ 64.

United States District Court
Northern District of California

Plaintiff argues that Rafield failed to protect Diadexus's assets when she failed to cause Diadexus to file for Chapter 11 bankruptcy or enter into a forbearance agreement. See id. ¶¶ 57-67, 82-88. To bring this claim against Rafield as a director—and thus protected by the exculpatory clause—the SAC would need to allege bad faith. See Mot. Ex. 4 at 4. However, as an officer, the exculpatory clause does not apply, see id., and thus the SAC need only meet the lower bar of plausibly pleading breach of any fiduciary duty.

The SAC adequately pleads a breach of fiduciary duty against Rafield. Perhaps most straightforwardly, the SAC makes out a claim for breach of the duty of loyalty. That duty can be violated when a person acts not in good faith; "for instance, where the fiduciary intentionally acts with a purpose other than that of advancing the best interests of the corporation, where the fiduciary acts with the intent to violate applicable positive law, or where the fiduciary intentionally fails to act in the face of a known duty to act, demonstrating a conscious disregard for his duties." Stone ex rel. AmSouth Bancorporation, 911 A.2d at 369.

The SAC alleges just that: that Rafield acted not in good faith when she prevented Diadexus from filing for Chapter 11 protection or enter forbearance (Claim I) and failed to conduct a sale of Diadexus or restructure the company to avoid its collapse (Claim III), SAC ¶¶ 57-67, 82-88. Specifically, Plaintiff alleges that: (1) Rafield knew by December 2015 that "there was a substantial likelihood that the Company would run out of operating cash during 2016," and knew by March 13, 2016 that the Company would run out of liquidity in the third quarter of 2016. SAC ¶¶ 29, 31. (2) Rafield refused to work with Alvarez because "it was contrary to her personal preferences and interests," writing that it was "unlikely to work for me personally" and that she had "no interest in working for Oxford." Id. ¶¶ 35, 36. (3) She stated that she would not "remain engaged" unless the company was "recapped" which would allow her to keep her job, rather than sell assets which would likely result in her termination. Id. ¶ 36. (4) Rafield refused to devote her attention to the sale or refinancing process at multiple critical times, stating to "Company counsel and Sulat" that "she was too 'booked,'" that "the board can get someone else" to

deal with Oxford, and that she "refused to spend her time putting together a business plan and strategy for Oxford." Id. ¶¶ 37, 39. (5) Rafield presented an attitude that directors observed as "an initial reaction that she wanted a severance trigger." Id. ¶ 41. (6) She expressed open contempt for the interests of creditors and shareholders, stating "I am not filing for bankruptcy to make it easy for Oxford. Let the shareholders sue Oxford for damaging their investment for the self-interest of Oxford." Id. ¶ 37. (7) She questioned why restructuring advisor Alvarez was on a board call "to discuss the Company's financial crisis." Id. ¶ 42. (8) Rafield required Leap Tide to "communicate exclusively with Rafield, who had a clear conflict, rather than Alvarez, which should have been running the process, or some other Company representative who might be less self-interested and less hostile." Id. ¶ 46. (9) Rafield "repeatedly referred to Leap Tide with repugnant language, would not permit Leap Tide to conduct diligence or even entertain discussions. Id. (10) She would not permit Cleveland HeartLab, which would eventually bid at the chapter 7 auction, to access diligence materials. Id. ¶ 47. (11) She antagonized Oxford by "clos[ing] the data room and revok[ing] Alvarez's authority to continue the marketing process." Id. ¶ 48. (12) Rafield admitted that as late as May 27, 2016 that it might consider a sale "if it could achieve a cooperative/consensual process for limiting director liability." Id. ¶ 49. And, (13) Rafield did not utilize chapter 11 to secure an adequate sale process. Id. ¶ 50.

These allegations suffice to state a claim for breach of the duty of loyalty because they support the inference that Rafield acted to promote her own self-interest—as demonstrated, for instance, by her statement that Oxford's proposal was "unlikely to work for [her] personally" and she had "no interest in working for Oxford," id. ¶ 36—and thus "intentionally act[ed] with a purpose other than that of advancing the best interests of the corporation," Stone, 911 A.2d at 369. Unlike the director defendants, where there is no allegation that they were prioritizing some other purpose over Diadexus's interests, there are such allegations as to Rafield. Cf. SAC ¶ 36. That is, the facts adequately allege that Rafield was "intentionally disregarding [her] duties." In re Chelsea Therapeutics Int'l Ltd. Stockholders Litig., 2016 WL 3044721, at *7 (Del. Ch. May 20, 2016).

This conclusion holds true even if, as Defendants urge, the business judgment rule applies both to directors and officers. See Opp. at vi. If that rule applies, "[t]he burden falls upon the proponent of a claim to rebut the presumption by introducing evidence" of "self-interest, if not self-dealing," or lack of "good faith or fail[ure] to exercise due care." Citron, 569 A.2d at 64 (internal citation omitted). Because the SAC alleges that Rafield was acting out of self-interest, it would meet that burden. Cf. In re Chelsea Therapeutics Int'l Ltd. Stockholders Litig., 2016 WL 3044721, at *7. Thus, even assuming that the business judgment rule applies, the SAC adequately pleads breach of fiduciary duty against Rafield. The Court thus DENIES the Motion to Dismiss Counts I and III against Rafield.

### b.      Claims II and IV: Gross Negligence

Under Delaware law, gross negligence is "reckless indifference to or a deliberate disregard of the whole body of stockholders or actions which are without the bounds of reason." Benihana of Tokyo, Inc. v. Benihana, Inc., 891 A.2d 150, 192 (Del. Ch. 2005), aff'd, 906 A.2d 114 (Del. 2006).

Plaintiff points to the same facts as above to argue that Rafield knew that Oxford would execute on Diadexus's default, yet acted to prevent Diadexus from taking any steps to protect the company from being "swept," for instance by entering a forbearance agreement, or to protect Diadexus's assets. SAC ¶¶ 68-81.

Defendants argue that these allegations are insufficient because, while the SAC states that Oxford presented a "reasonable" forbearance agreement, SAC ¶ 44, the SAC did not provide "details" about that agreement. Mot. at 15. But that lack of details does not foreclose, at this stage of litigation, the complaint. The allegation in the SAC is that Rafield knew that Oxford was going to "sweep" Diadexus, and yet refused to execute that agreement and actively blocked that agreement, against Alvarez's advice, and acted in an "inadequately informed basis." SAC ¶¶ 39, 40. Likewise, the SAC alleges that Rafield knew that sweep would adversely affect Diadexus's assets and yet failed to act. Id. ¶¶ 68-

81.

These allegations satisfy the requirement of gross negligence. See In re Fedders N. Am., Inc., 405 B.R. at 539 (it is gross negligence under Delaware law where "directors and officers to fail to inform themselves fully and in a deliberate manner." (citing Trenwick, 906 A.2d at 194)). And Defendants' arguments are not to the contrary; while they dispute whether there may be other explanations for Rafield's conduct, Mot. at 14-16, these arguments are unpersuasive where, as here, inferences must be drawn in favor of Plaintiff. See Western Reserve Oil & Gas Co., 765 F.2d at 1430. Moreover, unlike the allegations against Patterson, the SAC does specifically allege what conduct Rafield engaged in and why that conduct led to Diadexus not entering a forbearance agreement. See SAC ¶¶ 35-50. The SAC thus has stated a plausible claim against Rafield for gross negligence. The Court thus DENIES the Motion to Dismiss as to Counts II and IV against Rafield.

### D.    Judicial Notice

Finally, Defendants ask the Court take notice of four documents: two excerpts from Diadexus's Form 10-Ks filed with the SEC, Oxford's Notice of Event of Default and Reservation of Rights and is referenced in the SAC, and Diadexus's Certificate of Incorporation. Request for Jud. Notice. The Court previously took judicial notice of Diadexus's Certificate of Incorporation. See Minute Entry, Dec. 21, 2018 (Dkt. 36); Opp. to Request for Judicial Notice at 4 (Dkt. 50). Plaintiff recognizes that this holding is now the law of the case as to the Certificate of Incorporation. Opp. to Request for Jud. Notice at 4. It does not object to judicial notice of Oxford's Default Notice. Id. at 4. The Court hereby takes judicial notice of Diadexus's Certificate of Incorporation, as it did in addressing the First Motion to Dismiss, see Minute Entry Dec. 21, 2018, but declines to take judicial notice of the other documents, as they have no impact on the foregoing analysis.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the Motion to Dismiss as to Claim I against the director defendants without leave to amend; GRANTS the Motion to Dismiss as to Claim V without leave to amend; GRANTS the Motion to Dismiss as to Claims I and II against Patterson without leave to amend; DENIES the Motion to Dismiss as to Claims I, II, III, and IV against Rafield; and TAKES JUDICIAL NOTICE of Diadexus's Certificate of Incorporation.

**IT IS SO ORDERED.**

Dated: July 29, 2019



CHARLES R. BREYER
United States District Judge